UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

PAMELA BUSBY,

         Plaintiff,

 -against-           5:15-CV-1007 (LEK/ATB)

SYRACUSE CITY SCHOOL DISTRICT,

         Defendant.
_____

## MEMORANDUM-DECISION AND ORDER

### I. INTRODUCTION

Plaintiff Pamela Busby commenced this action against defendant Syracuse City School District, alleging unlawful discrimination in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq*. Dkt. No. 1 ("Complaint"); Dkt. No. 9 ("Amended Complaint"). Presently before the Court is the District's Motion for Summary Judgment. Dkt. No. 31 ("Motion"); see also Dkt. No. 31-1 ("Attorney Affirmation"); Dkt. No. 31-2 ("Reeve-Larham Affidavit"); Dkt. No. 31-3 ("Defendant's Statement of Material Facts"); Dkt. No. 31-4 ("Memorandum"). For the reasons that follow, the District's Motion is granted.

### II. BACKGROUND

#### A. Factual History

Busby is an African American female, Mem. at 13, who resides in Syracuse, New York, Attorney Affirmation, Ex. H ("Busby Deposition") at 10:2–3. Busby began working for the District as a school monitor in September 1989. Am. Compl. at 4;[1] Reeve-Larham Aff. ¶ 3. She

---

[1] Busby's Amended Complaint appears to include pages of various complaint forms, and her pages are not consecutively numbered. Thus, the Court will refer to the pages of the Amended Complaint as assigned by the Court's electronic filing system.

resigned from her employment effective July 1, 2016. Reeve-Larham Aff. ¶ 3. While employed by the District, Busby was a member of a collective bargaining unit represented by the Syracuse Teachers Association, Incorporated, Unit 8 (the "Union"). Id. ¶ 4. Busby was assigned to various school buildings during her employment. Id. ¶ 8. She was assigned to the District's McKinley-Brighton Elementary School for the 2013–2014 school year, replacing former school monitor Ronald Beebe. Am. Compl. at 4–5; Reeve-Larham Aff. ¶¶ 10–11. At McKinley-Brighton, Busby was stationed by the school's main entrance, and her responsibilities included placing traffic cones in front of the school when busses picked up and dropped off students, signing in visitors and ensuring that they did not wander the school unaccompanied, conducting building door checks, assisting with and intervening in issues occurring near the main entrance, and providing security and support for staff and students. Reeve-Larham Aff. ¶ 14, Ex. F. While Busby was assigned to McKinley-Brighton, Amanda Williams was the school's principal and Carin Reeve-Larham was its vice-principal. Am. Compl. at 4; Reeve-Larham Aff. ¶¶ 1, 30.

During the 2013–2014 school year, Busby had multiple conversations and counseling sessions with Reeve-Larham regarding her job performance. Reeve-Larham Aff. ¶¶ 16–42. On September 19, 2013, Reeve-Larham provided Busby a written counseling memorandum regarding her personal cell phone usage while on duty. Id. ¶ 17, Ex. D ("September 19 Counseling Memorandum"); see also Busby Dep. at 81:8–82:8 (discussing the September 19 Counseling Memorandum). According to the September 19 Counseling Memorandum, Reeve-Larham spoke to Busby at least four times in September 2013 regarding her cell phone usage while on duty. Sept. 19 Counseling Mem. The September 19 Counseling Memorandum is consistent with the District's policy titled "Telephone Service and Use Including Cell Phones and

2

Personal Electronic Devices," which prohibits personal cell phone usage by District employees while on duty. Reeve-Larham Aff. Ex. E.

On October 18, 2013, Reeve-Larham issued a second counseling memorandum to Busby regarding her cell phone usage, extended lunch breaks, and District requirements regarding confidentiality. Reeve-Larham Aff. Ex. G ("October 18 Counseling Memorandum"). In the October 18 Counseling Memorandum, Reeve-Larham memorialized reports she had received that Busby had violated confidentiality by "speaking in detail about issues related to children and staff from McKinley-Brighton." Id. The October 18 Counseling Memorandum also noted that Busby had again been observed using her cell phone while on duty. Id.

On April 10, 2014, Busby received a third counseling memorandum regarding two separate incidents. Reeve-Larham Aff. ¶ 30, Ex. H ("April 10 Counseling Memorandum") at 1. The first incident occurred on April 9, 2014, and concerned a non-verbal special-needs student who "broke free from his 1:1 teaching assistant during transition and ran toward the main entrance door of the school." Apr. 10 Counseling Mem. at 1. Busby did not intervene to prevent the student from leaving the building. Id.; Busby Dep. 22:21–23:2. The second incident, which occurred on April 10, 2014, involved Busby's failure to prevent a different student from running out of the school's main entrance. Reeve-Larham Aff. ¶¶ 28–29; Apr. 10 Counseling Mem. at 1; Busby Dep. at 65:15–68:24. Busby received an additional counseling memorandum on April 10, 2014 concerning her adherence to McKinley-Brighton's guest sign-in policy, placement of traffic cones, and continued cell phone usage while on duty. Reeve-Larham Aff. ¶ 32, Ex. I.

On June 6, 2014, Busby received a fifth counseling memorandum regarding an incident that occurred on June 5, 2014. Reeve-Larham Aff. Ex. J ("June 5 Counseling Memorandum").

3

On June 5, Busby received a report that a student had left his classroom and was "running around the building." Busby Dep. at 73:7–8. After searching the school, Busby was unable to locate the missing student. Id. at 73:13–16; Reeve-Larham Aff. ¶ 36. If a missing student cannot be located, McKinley-Brighton protocol required a school monitor to "immediately notif[y]" school administrators. Reeve-Larham Aff. ¶ 37. Yet Busby did not notify any school administrator that she was unable to locate the missing student on June 5. Id. ¶ 38; June 5 Counseling Mem. at 1; Busby Dep. at 73:17–20, 76:24–77:6. At the time, Busby explained that she "did not know" that she was required to notify an administrator when she was unable to locate a missing student. June 5 Counseling Mem. at 1. Reeve-Larham learned that the missing student had left the school only when the student's grandfather returned him to the building. Id.; Reeve-Larham Aff. ¶ 38. Following the June 5 incident, Reeve-Larham referred Busby to the District's Office of Talent Management "for review" and "to discuss ongoing concerns with [Busby's] job performance." June 5 Counseling Mem. at 2; Reeve-Larham Aff. ¶ 41.

On June 25, 2014, Plaintiff and her Union representative met with District personnel to discuss ongoing concerns with her job performance. Reeve-Larham Aff. ¶ 42. On September 11, 2014, District Director of Staff Relations Joshua Beardall notified Busby that her employment with the District was being terminated because of her "continued failure to perform the duties of [her] job, resulting in unsafe situations for students." Reeve-Larham Aff. ¶ 43, Ex. K ("September 11 Letter"); Busby Dep. 103:2–9. The Union filed a grievance with the District contesting Busby's termination, which was denied and pursued to arbitration. Busby Dep. at 103:16–21; Reeve-Larham Aff. ¶ 47. On October 14, 2014, the New York State Public Employment Relations Board appointed Ronald Kowalski to serve as arbitrator of Busby's

grievance. Reeve-Larham Aff. ¶ 48, Ex. L. Both Busby and the District were represented by counsel at the arbitration, which occurred on January 22, 2015. Reeve-Larham Aff. ¶ 48, Ex. M ("Arbitration Order") at 1; Busby Dep. at 103:24–104:11. Counsel for Busby and the District presented witnesses and documentary evidence to the Arbitrator. Busby Dep. at 104:20–25. Plaintiff and Defendant also stipulated to the following statement of issue for the Arbitrator: (1) "Was the District's termination of Ms. Busby an unreasonable or arbitrary exercise of management's rights, as described in Article 4 of the parties' collective bargaining agreement?" and (2) "Should the burden of proof, as set forth in Article 18.A. be sustained by the employee, what shall the penalty be, if any?" Arbitration Order at 2.

The Arbitrator issued an opinion and award on March 16, 2015. Arbitration Order. The Arbitrator concluded that the April 9, April 10, and June 5 incidents "represent[ed] some misconduct [by Busby] by way of a lack of performance of the duties of her position." Id. at 11; see also Busby Dep. at 106:25–107:5 (discussing the Arbitration Order). Specifically, the Arbitrator concluded that during the April 9 incident, Busby "did not get up and attempt to assist in preventing the student from leaving the building," and that she "should have acted to at least assist . . . as that is one of her duties." Arbitration Order at 9. Regarding the April 10 incident, the Arbitrator found that Busby was "not being proactive with respect to a student leaving the building" and that she "should have also made every effort to stop the student even though the event happened quickly." Id. at 9–10. Finally, with respect to the June 5 incident, the Arbitrator determined that Busby did not report the missing student to any administrator after unsuccessfully searching for him in the school. Id. at 10. Due to Busby's "misconduct by way of a lack of performance of the duties of her position," the Arbitrator determined that the District

5

was justified in penalizing her. Id. at 11. But the Arbitrator determined that termination was too severe in light of Busby's "long work record with the District" and because the misconduct did "not rise to the level of something approaching gross incompetence." Id. Therefore, the Arbitrator ordered Busby reinstated, "but without back pay." Id.[2] Busby returned to work for the District as a monitor on March 23, 2015, and was assigned to Clary Middle School. Busby Dep. at 107:21–108:11; Reeve-Larham Aff. ¶ 57.

On October 3, 2014, Busby filed a verified complaint with the New York State Division of Human Rights alleging that Reeve-Larham and the District discriminated against her on the basis of race, color, and gender. Reeve-Larham Aff. Ex. N ("New York Complaint"); Busby Dep. 113:16–114:2. Busby's New York Complaint was also filed with the federal Equal Employment Opportunity Commission ("EEOC"). Reeve-Larham Aff. ¶ 59, Ex. P ("EEOC Order"). On March 26, 2015, the Human Rights Division determined that there was "no probable cause to believe that [Reeve-Larham and the District] engaged in . . . the unlawful discriminatory practice" alleged by Busby and reported that its "[i]nvestigation did not show that [Busby] was denied equal terms, conditions and privileges of employment due to her race/color, sex and/or opposition to discrimination/retaliation." Reeve-Larham Aff. Ex. O, at 1. The Human Rights Division concluded that "[t]here was no nexus established between [Busby's] race/color or sex and the progressive disciplinary process" she had faced and therefore dismissed the New York

---

[2] Busby was terminated on September 11, 2014, Sept. 11 Letter at 1, and ordered reinstated "without back pay" on March 16, 2015, Arbitrator Order at 11. As a result, the effective penalty affirmed by the Arbitrator was a six-month suspension without pay. Busby Dep. at 108:12–21.

Complaint. Id. On May 20, 2015, the EEOC adopted the Human Rights Division's findings and dismissed Busby's complaint. EEOC Order.

### B. Procedural History

Busby commenced this action on August 19, 2015, alleging unlawful discrimination in violation of Title VII. Compl. Upon Report and Recommendation filed by the Honorable Andrew T. Baxter, United States Magistrate Judge on August 20, 2015, Dkt. No. 5 ("Report-Recommendation"), this Court dismissed Busby's initial Complaint for failure to state a claim under 28 U.S.C. § 1915(e)(2)(B)(ii). Dkt. No. 7. Following dismissal, Busby filed an Amended Complaint on October 7, 2015. Am. Compl. Pursuant to the Court's Scheduling Order, discovery concluded on June 30, 2016. Dkt. No. 19, at 1. The District moved for summary judgment on August 30, 2016. Mot. Busby's submitted her opposition to the District's Motion on September 20, 2015. Dkt. No. 33 ("Response"). The District filed its Reply on September 26, 2016. Dkt. No. 35 ("Reply").

## III. LEGAL STANDARD

Rule 56 of the Federal Rules of Civil Procedure instructs courts to grant summary judgment if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Although "[f]actual disputes that are irrelevant or unnecessary" will not preclude summary judgment, "summary judgment will not lie if . . . the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); see also Taggart v. Time, Inc., 924 F.2d 43, 46 (2d Cir. 1991) ("Only when no reasonable trier of fact could find in favor of the nonmoving party should summary judgment be granted.").

The party seeking summary judgment bears the burden of informing the court of the basis for the motion and of identifying those portions of the record that the moving party claims will demonstrate the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Similarly, a party is entitled to summary judgment when the nonmoving party carries the ultimate burden of proof and has failed "to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Id. at 322.

In attempting to repel a motion for summary judgment after the moving party has met its initial burden, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). At the same time, a court must resolve all ambiguities and draw all reasonable inferences in favor of the nonmoving party. Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 150 (2000); Nora Beverages, Inc. v. Perrier Grp. of Am., Inc., 164 F.3d 736, 742 (2d Cir. 1998). Thus, a court's duty in reviewing a motion for summary judgment is "carefully limited" to identifying genuine disputes of fact, "not to deciding them." Gallo v. Prudential Residential Servs., Ltd. P'ship, 22 F.3d 1219, 1224 (2d Cir. 1994).

## IV. DISCUSSION

Busby alleges two forms of employment discrimination under Title VII. First, she claims she was treated differently from male and non–African American female District employees who engaged in similar conduct but were not disciplined. Am. Compl. at 3, 8. Second, she argues the District subjected her to a hostile work environment because of her race. Id. at 8. For the reasons that follow, the District is entitled to summary judgment on both claims.

### A. Disparate Treatment

Under Title VII, it is "an unlawful employment practice for an employer . . . to discharge any individual, or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). In an employment discrimination action, the plaintiff bears the initial burden of proving, by a preponderance of the evidence, a prima facie case of discrimination. St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 506–10 (1993). This initial burden is "minimal." Id. at 506.

In order to set forth a prima facie case of disparate treatment in violation of Title VII, a plaintiff must show that: "(1) she is a member of a protected class; (2) her job performance was satisfactory; (3) she suffered adverse employment action; and (4) the action occurred under conditions giving rise to an inference of discrimination." Demoret v. Zegarelli, 451 F.3d 140, 151 (2d Cir. 2006) (citing McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973)). Once the plaintiff satisfies her initial burden, the burden shifts to the employer to articulate some legitimate, nondiscriminatory reason for the adverse employment action. McDonnell Douglas, 411 U.S. at 802. If the defendant provides a legitimate, nondiscriminatory reason for the action, "the presumption raised by the prima facie case is rebutted and drops from the case." St. Mary's, 509 U.S. at 507 (quoting Tex. Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248, 255 (1981)).

Busby essentially alleges that the District discriminated against her through its employee Reeves-Larham in two ways. First, she argues that Reeves-Larham treated Busby differently from non–African American female employees by criticizing Busby's job performance and providing counseling memoranda. Am. Compl. at 3, 8. Second, Busby argues that the District terminated

9

her after determining that she had failed to adequately perform her job, but did not terminate male or non–African American female employees for allegedly similar conduct. Id. Busby satisfies the first and third prongs of the prima facie case. The District does not dispute that Busby, an African American woman, is a member of a protected class. Mem. at 13. It is also clear that Busby suffered an adverse employment action when she was terminated.[3] Feingold v. New York, 366 F.3d 138, 153 (2d Cir. 2004). But Busby cannot establish a prima facie case of discrimination in violation of Title VII because there is no evidence to support an inference of discrimination on the basis of race or gender. This is fatal to Busby's case.

    Busby has offered no evidence beyond her own suspicion that she was terminated because of her race or gender. Busby Dep. at 26:24–27:15, 30:2–11, 92:5–10. Busby does not claim that Reeve-Larham made derogatory comments about Busby's gender. Id. at 30:9–11. Nor does she recall any insulting or inappropriate comments regarding her race or color. Id. at 30:12–14, 91:25–92:4. In short, Busby's claims are premised entirely on the fact that she "just believe[s] that" Reeve-Larham discriminated against her because she is an African American woman. Id. at 92:7; see also id. at 123:23–124:4 ("I basically feel that they lied on me because of my race and figure she can get away with it . . . . I don't know basically what her intentions were, but my performance was way better than what they're saying."). This is not enough to sustain a claim under Title VII. Busby's "'[feelings and perceptions] of being discriminated against [are] not

---

[3] Though Busby was eventually reinstated, she nonetheless was effectively suspended for six months without pay, which clearly constitutes an adverse employment action. See, e.g., Terry v. Ashcroft, 336 F.3d 128, 138 (2d Cir. 2003) ("Examples of materially adverse changes include 'termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices . . . unique to a particular situation.'" (alteration in original) (quoting Galabya v. N.Y.C. Bd. of Educ., 202 F.3d 636, 640 (2d Cir. 2000))).

evidence' of discrimination." Bickerstaff v. Vassar Coll., 196 F.3d 435, 456 (2d Cir. 1999) (alterations in original) (quoting Fisher v. Vassar Coll., 70 F.3d 1420, 1439 (2d Cir. 1995)); see also Nguyen v. Dep't of Corr. & Cmty. Servs., 169 F. Supp. 3d 375, 390 (S.D.N.Y. 2016) (noting that "bare suspicions of discrimination in the absence of any supporting evidence will not suffice" to support an inference of discrimination); Williams v. All. Nat'l Inc., No. 98-CV-7984, 2001 WL 274107, at *5 (S.D.N.Y. Mar. 19, 2001), aff'd, 24 F. App'x. 50 (2d Cir. 2001) ("[A plaintiff's beliefs cannot replace the 'admissible evidence' required to permit an inference of discrimination and survive summary judgment." (quoting Campbell v. All. Nat'l. Inc., 107 F. Supp. 2d 234, 244 (S.D.N.Y. 2000))). While Busby's allegation that the District treated her differently because of her race and gender may be enough to avoid dismissal at the motion-to-dismiss stage, see Dkt. No. 8 (approving Plaintiff's Amended Complaint), more is required to survive summary judgment. Having obtained the benefit of discovery, Busby must present evidence that could allow a reasonable fact finder to make an infer discrimination. She has not done so, and therefore the District is entitled to summary judgment.

The lack of evidence to support an inference of discrimination is highlighted by the Arbitrator's conclusion that the April 9, April 10, and June 5 incidents "represent some misconduct [by Busby] by way of a lack of performance of the duties of her position." Arbitration Order at 11.[4] Though not determinative, a finding of misconduct by "an undisputedly independent, neutral, and unbiased adjudicator" is "is highly probative of the absence of discriminatory intent." Collins v. N.Y.C. Transit Auth., 305 F.3d 113, 119 (2d Cir. 2002).

---

[4] While the Arbitrator ultimately determined that Busby should not have been terminated, he nonetheless agreed with the District that her acts constituted misconduct and that a six-month suspension "without back pay" was an appropriate "penalty." Arbitrator Order at 11.

"Where, as here, that decision follows an evidentiary hearing and is based on substantial evidence, the Title VII plaintiff, to survive a motion for summary judgment, must present strong evidence that the decision was wrong as a matter of fact—e.g. new evidence not before the tribunal—or that the impartiality of the proceeding was somehow compromised." Id. Busby has not met this standard and "has offered insufficient evidence of causation linking [her] termination to motives of retaliation or discrimination to overcome the cumulative probative weight of the evidence of a legitimate reason for" the penalty affirmed by the Arbitrator. Id. As a result, Busby cannot establish a reasonable inference of discriminatory intent.[5]

It is clear that Busby suffered economic hardship after losing her job, Busby Dep. at 127:16–128:20; Am. Compl. at 7; Dkt. 33, at 34, and the Court has sympathy for her situation. But there is simply no evidence from which a reasonable jury could conclude that the District or its employees were motivated by gender or race in terminating Busby or imposing other disciplinary measures. As a result, the Court grants summary judgment with respect to Busby's disparate treatment claims.

### B. Hostile Work Environment

---

[5] Even if Busby had presented some evidence to support an inference of discrimination, it is not clear she was actually treated differently from other employees. For example, central to her claim is the allegation that the District disciplined her more harshly than other employees, including her predecessor Ronald Beebe, a Caucasian male. Am. Compl. at 3, 5; Busby Dep. at 30:23–31:3. As Busby conceded in her deposition, though, she has no knowledge of Beebe's disciplinary record and therefore does not know whether he was disciplined differently from her. See id. at 135:15–17 ("Q. But you have no knowledge as to what his disciplinary history was; correct? A. No, sir."). In fact, the only evidence in the record regarding Beebe's job performance suggests that he received at least one negative evaluation while at McKinley-Brighton. Reeve-Larham Aff. Ex. C (evaluation, dated May 7, 2013, in which Beebe received an evaluation of "unsatisfactory" in six of eleven categories reviewed).

"In order to establish a claim of hostile work environment, a plaintiff must produce evidence that 'the workplace is permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment.'" Demoret, 451 F.3d at 149 (quoting Harris v. Forklift Sys., Inc., 510 U.S. 17, 21 (1993)). A plaintiff must show "that the environment was objectively hostile and abusive," not merely that plaintiff perceived the environment to be abusive. Id. (citing Hayut v. State Univ. of N.Y., 352 F.3d 733, 745 (2d Cir. 2003)). Isolated incidents generally do not amount to a hostile work environment "unless they are 'of sufficient severity' to 'alter the terms and conditions of employment as to create such an environment.'" Id. (quoting Patterson v. County of Oneida, 375 F.3d 206, 227 (2d Cir. 2004)). Typically, "incidents must be more than episodic; they must be sufficiently continuous and concerted in order to be deemed pervasive." Id. (quoting Alfano v. Costello, 294 F.3d 365, 374 (2d Cir. 2002)).

To analyze a hostile work environment claim, a court must "look to the record as a whole and assess the totality of the circumstances, considering a variety of factors including 'the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance,' [and] the extent to which the conduct occurred because of plaintiffs' [gender or race]." Id. (citation omitted) (quoting Harris, 510 U.S. at 23).

Busby has not presented evidence to support her hostile work environment claim. As noted above, Busby has not alleged that any District employee made derogatory comments about her race or gender. Busby Dep. at 30:9–14, 91:25–92:4. Busby claims that Reeve-Larham's verbal and written counseling and criticisms of her job performance in the 2013–2014 school

13

year created a hostile work environment. Id. at 91:05–13.[6] Yet even assuming that Reeve-Larham "misworded a lot of stuff" in her written evaluations of Busby, id. at 92:12–17, Busby has not presented any evidence of conduct that rises to the level of a hostile work environment. Absent extreme circumstances, job performance criticism does not create a hostile work environment. See Marcus v. Barilla Am. N.Y. Inc., 14 F. Supp. 3d 108, 113 (W.D.N.Y. 2014) ("[A] series of sporadic, isolated incidents in which managers verbally disagreed with plaintiff or criticized her job performance . . . falls well short, as a matter of law, of describing discriminatory conduct that is objectively threatening, intimidating, humiliating or harassing."); Williams v. New York City Hous. Auth., No. 12-CV-825, 2013 WL 12080915, at *7 (E.D.N.Y. Aug. 7, 2013) (holding that issuance of instructional and counseling memoranda does not create a hostile work environment). "[M]ere criticism of an employee's work . . . does not fall within the ambit of Title VII unless [the supervisor's] conduct is so severe, pervasive, offensive and 'permeated with discriminatory intimidation' as to alter the terms and conditions of his subordinate's employment." Marcus, 14 F. Supp. 3d at 114 (quoting Harris, 510 U.S. at 21). Busby has presented no evidence that such extreme conduct occurred here. While Busby may disagree with Reeve-Larham's assessment of her job performance, there is no indication that Reeve-Larham threatened, intimidated, or humiliated her. The counseling memoranda prepared in response to the April 9, 10, and June 5 incidents are unobjectionable on their face and do not come close to meeting the high standard articulated in Marcus and other cases.

---

[6] Busby does not claim that any District employee besides Reeve-Larham subjected her to a hostile work environment. Busby Dep. at 90:21–21.

Busby has not presented evidence that would allow a reasonable jury to believe that the District exposed her to a hostile work environment. The District is therefore entitled to summary judgment on Busby's hostile work environment claim.

## V. CONCLUSION

Accordingly, it is hereby:

**ORDERED**, that the Districts's Motion for Summary Judgment (Dkt. No. 31) is **GRANTED** and Busby's Amended Complaint (Dkt. No. 9) is **DISMISSED**; and it is further

**ORDERED**, that the Clerk of the Court serve a copy of this Memorandum-Decision and Order on all parties in accordance with the Local Rules.

**IT IS SO ORDERED.**

DATED:   April 17, 2017
         Albany, New York

_____
Lawrence E. Kahn
U.S. District Judge